UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ERIKA BENTLEY-AMMONDS,

                Plaintiff,                                **COMPLAINT**

            -against-                              Jury Trial Demanded

NORTHWELL HEALTH, INC.,
                                                      Docket No.:

                Defendant.
-------------------------------------------------------------X

Plaintiff, Erika Bentley-Ammonds, by and through her attorneys, LEEDS BROWN LAW, P.C., complaining of Defendant herein, alleges upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq.*, and any other cause of action which can be inferred from the facts set forth herein.

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. §1343(a)(3), 28 U.S.C. § 1343(a)(4).

3. Venue is proper pursuant to 28 U.S.C. § 1391.

4. All conditions precedent to maintaining this action have been fulfilled. On December 11, 2017, a complaint was filed with the New York State Division of Human Rights ("NYSDHR"), which was dual-filed with the Equal Employment Opportunity Commission ("EEOC"). On August 21, 2018, the EEOC issued a right to sue letter. This action was properly instituted within 90 days of the receipt of said letter.

1

## PARTIES

5. Plaintiff, Erika Bentley-Ammonds ("Erika") is an African-American Woman of Caribbean descent. Erika was and still is a resident of Nassau County, New York.

6. Defendant, Northwell Health, Inc. (the "Hospital") is a domestic not-for-profit corporation with a principal place of business in Great Neck, New York. The Hospital, previously known as North Shore-LIJ Health System, is the largest integrated health system in New York State.

## FACTUAL BACKGROUND

7. In October 2014, Erika was hired by the Hospital as Clinical Director – Medicaid Health Home. In this position, Erika was supervised by Jerry Randazzo (VP Case Management), Mary DiCostanzo (Director of Transitional Services) and Dr. Zena Brown (Medical Director – Health Home).

8. At all relevant times, Erika performed her job duties in an exemplary manner.

9. In January 2017, because of her exceptional performance, Erika was promoted to Senior Director – Medicaid Health Home. The promotion was to become effective in March 2017.

10. Later that month, the Hospital hired Elizabeth Wolff as Medical Director – Transitional Services. Wolff's duties included, *inter alia*, the supervision of the Medicaid Health Home Department.

11. In March 2017, Erika was officially promoted to Senior Director – Medicaid Health Home. At that time, Randazo remained as one of Erika's supervisors, but Wolff became

2

Erika's primary supervisor.

12. Immediately upon assuming her new position, it became apparent to Erika that Wolff harbored a discriminatory animus toward African-Americans.

13. In the first month, Wolf brazenly stated during a meeting that she hired "a Caucasian nurse, not black, like Erika." When making this comment, Wolf pointed at Erika for emphasis. Wolf said that the new hire's name was Valerie, which "was a Caucasian sounding name, not a Black name." This was witnessed by Sophie Jann (Executive Medical Director), Ann Ferguson (Senior Director – Billing), Christina Alonzo (Director - Children's Health Home), and April Panzer (Senior Project Manager).

14. After this meeting, Erika complained to Nora Haragos (Senior Human Resources Manager) about Wolff's race-based comments. Haragos was dismissive, and told Erika to bring her complaint to Dr. Kris Smith (VP – Medical Management). Erika protested, as Haragos was head of human resources and was thus responsible for addressing such complaints. Haragos then begrudgingly stated she would look into the matter. However, Haragos never investigated Erika's complaint.

15. Given Haragos' dismissive attitude, Erika brought her complaint to Smith the following day. Smith told Erika that he felt ashamed that Wolff would make such a comment, and promised to speak with Wolff. However, Smith also never investigated Erika's complaint.

16. In April 2017, Wolff commented that Erika should "keep her bong next to her desk and take hits off it throughout the day." Erika told Wolff that she found this comment to be

3

racist and unprofessional; Wolff smirked and changed the subject.

17. Later that day, Erika complained about Wolff's comment to Haragos. Haragos shook her head and did nothing, so Erika then complained to Randazzo. Randazzo promised to speak with Smith about the comment. Erika told Randazzo that this was the second race-based comment from Wolff that she had complained about, and nothing had been done thus far. Randazzo assured Erika that the matter would be addressed. However, Randazzo never addressed the matter.

18. On August 10, 2017, Wolff summoned Erika to her office, and alleged Erika stole time by taking seven compensatory days without approval during the period of January 1, 2017 and July 31, 2017.[1] Erika explained that she did not steal time, but rather "took time back," which involves clocking in on a non-work day to compensate for prior days worked in which no compensation had been paid (e.g., weekends). Erika explained to Wolff that this was a common and accepted practice amongst the Hospital's employees, and that before taking back these seven days, she had obtained permission from Randazzo. Wolff replied that Randazzo was wrong to give permission, and issued Erika a written warning.

19. Many other employees who engage in the practice of "taking time back" have never been issued a write-up. These employees include Randazzo, Brown, Haragos,[2] Dicostanzo, Alonzo, Ariel Hayes (Senior Administrative Director), Akash Poddar (Data Analyst),

---

[1] Notably, Wolff was not even Erika's supervisor for over two months of this period.

[2] That Haragos also takes time back is particularly demonstrative of the fact it is an acceptable practice, given that Haragos is the Senior Human Resources Manager and is thus in the best position to determine whether the practice is permissible.

4

Nadeem Ramjan (Manager of Data Analytics), Nancy Copperman (Vice President – DSRIP Program), Mohammad Humaidi (Assistant Vice President – Analytics), Wendi Shepard (Manager – Adult Home Program), and Roselee Raines (Administrative Assistant Supervisor).

20. Erika submitted a rebuttal to the written warning, reiterating the fact that she had obtained supervisory permission, and that taking back time was a common practice. Still, Wolff refused to retract the discipline.

21. On September 14, 2017, Erika met with Haragos regarding Mendelson Joseph, an underperforming Resource Coordinator. Also present at this meeting were Novella Alfario (Nurse) and Deena Orensteen (Social Worker). Erika, Alfario, and Orensteen each explained their grievances regarding Joseph's poor performance. Haragos replied that Joseph would be issued a written warning.

22. On or about September 18, 2017, in connection with Joseph's planned discipline, Wolff and Haragos advised Erika to gather information regarding his poor performance. Erika emailed Wolff and Haragos regarding same, and Erika forwarded the email to Alfario, requesting additional information about Joseph. Alfario sent her reply (which contained the whole email chain and the case to be made against Joseph) to the entire department, alerting everybody of Joseph's planned discipline.

23. On September 20, 2017, after receiving several complaints from nurses who did not want to work with Joseph due to his poor performance, Erika, together with Alfario and Orensteen, met with the nurses to discuss the matter. As everybody already knew about Joseph's planned discipline due to Alfario's email, and Alfario and/or Orenstein had also

5

previously informed the nurses that they had met with Haragos regarding Joseph's impending write-up, Erika acknowledged same, but asked that the nurses keep this information confidential, as the warning had not yet been issued. Erika told the nurses that she hoped the warning would cause Joseph to improve his performance, and asked the nurses to stop refusing to work with Joseph, as it was causing scheduling problems and refusing to work with him could result in termination or other discipline.

24. On September 25, 2017, Erika was summoned to a meeting with Haragos and Wolff.[3] Haragos accused Erika of disclosing confidential information regarding Joseph's impending discipline (despite the fact everyone at the meeting already knew about it), and "threatening" the staff not to talk about it. Haragos then told Erika she was suspended pending an investigation.

25. On September 28, 2017, Erika was summoned to a meeting with Haragos and Randazzo, and terminated. Despite the fact Erika had been suspended, neither addressed the suspension, and merely stated that "the business is going in another direction, and you are not a match for that direction." Erika was then presented with a termination letter and general release of claims, and the meeting concluded.

26. Erika did not review the termination letter until after the termination meeting. Unlike the vague and cursory reasons presented at the meeting, the termination letter purported to set forth a specific reason for the termination – the disclosure of confidential information. Additionally, the termination letter stated, "we note that on multiple occasions since assuming your leadership role with Health Solutions you have been counseled concerning

---

[3] Wolff was among the recipients of Alfario's mass-email about Joseph's impending discipline, and thus knew the nurses were aware of it prior to Erika's discussion with them regarding same.

your unprofessional demeanor." This was false, as no such counseling ever occurred.[4] Thus, upon information and belief, this letter was created as a pretext to justify Erika's unlawful termination.

27. On or about May 2018, the Hospital terminated Wolff, for the stated reasons that she poorly supervised her subordinates and lacked basic communications skills

## CLAIM FOR RELIEF
**(Title VII – Discrimination and Retaliation)**

28. As set forth above, the Hospital subjected Erika to adverse actions in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq, on the basis of her race and her opposition to discriminatory practices.

WHEREFORE, Plaintiff demands judgment against Defendant, for all compensatory, emotional, physical, and punitive damages (where applicable), lost pay, and any other damages permitted by law. It is further requested that this court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled. Plaintiff demands a trial by jury.

---

[4] Other than the pretextual written warning (see ¶¶ 18-20), the closest thing to a "counseling" that Erika received a performance review, which was largely average and did not contain any language indicating Erika's demeanor was perceived as unprofessional.

Dated: Carle Place, New York
November 13, 2018

                                              LEEDS BROWN LAW, P.C.
*Attorneys for Plaintiff*
One Old Country Road, Suite 347
Carle Place, N.Y. 11514
(516) 873-9550

_____/s_____
RICK OSTROVE
BRANDON OKANO